

**CLERK'S OFFICE**
**A TRUE COPY**
**Mar 26, 2025**
**s/ K. Reed**
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br>information associated with Facebook accounts ahmad.abulawi.739,<br>bahaa.abulawi, bahaa.abulawi.1, ray.moore.376695 and Facebook Page IDs<br>478477182894539, 532433143289323, 323138261485782, 103136928703510<br>(the "Target Accounts"), that is stored at premises owned, maintained,<br>controlled, or operated by Meta Platforms, Inc. ("Meta") | Case No.    25    MJ    60 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

Please see Attachment A.

located in the _____ Eastern _____ District of _____ Wisconsin _____ , there is now concealed *(identify the person or describe the property to be seized)*:

Please see Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 19 U.S.C. § 1526 | Importation of Counterfeit Merchandise |
| 18 U.S.C. § 371 | Conspiracy to Commit an Offense |
| 18 U.S.C. § 2320 | Trafficking in Counterfeit Merchandise |

The application is based on these facts:

Please see Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

JULIUS KLEVINSKAS   Digitally signed by JULIUS KLEVINSKAS
Date: 2025.03.25 14:55:15 -05'00'

*Applicant's signature*

Special Agent Julius Klevinskas

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ telephone _____ *(specify reliable electronic means).*

Date:    03/26/2025

*Judge's signature*

City and state:    Milwaukee, Wisconsin      Honorable William E. Duffin, U.S. Magistrate Judge

*Printed name and title*

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Julius Klevinskas, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.     I make this affidavit in support of an application for a search warrant for information associated with Facebook accounts ahmad.abulawi.739, bahaa.abulawi, bahaa.abulawi.1, ray.moore.376695 and Facebook Page IDs 478477182894539, 532433143289323, 323138261485782, 103136928703510 (the "Target Accounts"), that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc. ("Meta"), a company headquartered in Menlo Park, California. The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Meta to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with the account.

2.     I am a sworn law enforcement officer currently employed as a Special Agent with the Department of Homeland Security (DHS), Homeland Security Investigations (HSI) and have been so employed since approximately January 2023. I am currently assigned to the Chicago Field Division – Milwaukee Resident Office (RAC). Since becoming a Special Agent, I  have received specialized training in various aspects of law enforcement and my responsibilities include conducting investigations of alleged criminal violations of federal statutes and laws. Prior to my tenure as a HSI Special Agent, I was a Diversion Investigator with the United States Department of  Justice (DOJ), Drug Enforcement Administration (DEA), Milwaukee District Office, from approximately July 2019 to January 2023.

3.     The facts in this  affidavit come from my personal observations, my training and

experience, and information obtained from other agents, law enforcement officers and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that evidence of violations of Title 19, United States Code, Section 1526 (importation of counterfeit merchandise) and Title 18 United States Code, Sections 371 (conspiracy to commit an offense) and 2320 (trafficking in counterfeit goods), further described below and in Attachment B, will be found in the Target Accounts, further described in Attachment A.

## JURISDICTION

5. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. §§ 2711, 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

### Overview

6. Since approximately April 2020, Homeland Security Investigations (HSI) has been investigating AHMAD YOUSEF JUMAA ABULAWI ("AHMAD ABULAWI") for the importation and trafficking of counterfeit goods through the operation of retail store-front businesses, in particular, DUTTI FASHION, LE DUTTI FASHION, and JORDAN RIVER FASHION, all located in Milwaukee, Wisconsin. U.S. Customs and Border Protection (CBP) have seized several international express consignment parcels from outside the United States destined for AHMAD ABULAWI and his businesses in Milwaukee, Wisconsin. As detailed

2

below, the international shipments were falsely manifested and contained hats, wallets, watches, purses, and other clothing and apparel merchandise containing counterfeit trademarks from various brand name designer companies, to include, but not limited to, Louis Vuitton, Gucci, and Rolex. CBP Import Specialists have determined the manufacturer's suggested retail price (MSRP) for the seized property exceeded $1.6 million. According to CBP records, AHMAD ABULAWI and his businesses continued to receive packages as of the end of 2024.

7. The investigation was initiated in conjunction with Edward R. Kirby & Associates (hereinafter referred to as "Kirby"), a licensed private detective agency in the State of Illinois. Kirby represents numerous brand name companies, including designer clothing brands. Since approximately 1985, Kirby has conducted investigations on behalf of companies such as Apple, Samsung, Louis Vuitton, Nike, and others regarding the manufacturing, sale, and distribution of counterfeit trademarked merchandise. As part of this investigation, HSI Milwaukee Special Agents have been in contact with Kirby's Vice President Kevin Read regarding the counterfeit merchandise for sale at DUTTI FASHION, LE DUTTI FASHION, and JORDAN RIVER FASHION. Kevin Read has been a licensed Private Detective in Illinois since 1999 and has been trained by companies to identify counterfeit products. Kevin Read is authorized to work with law enforcement regarding individuals manufacturing and distributing counterfeit trademarked items.

8. As detailed in this affidavit, Kirby Investigators have conducted multiple covert purchases of counterfeit merchandise from locations associated with AHMAD ABULAWI and have concluded that some of the merchandise sold at these businesses was counterfeit. In October 2022, HSI Special Agents in conjunction with Kirby Investigators conducted an overt operation that resulted in the voluntary surrender and seizure of hundreds of counterfeit products

3

from businesses owned and operated by AHMAD ABULAWI.

9. HSI Special Agents later learned that following an overt seizure of hundreds of counterfeit products by HSI Special Agents, LE DUTTI FASHION had closed down and that the business was Administratively Dissolved in December 2022.

10. In January 2024, HSI Special Agents were contacted by Kevin Read informing them that the retail store-front business DUTTI FASHION was again selling counterfeit merchandise. HSI Special Agents also learned that another retail store-front business, JORDAN RIVER FASHION, believed to be owned and/or operated by BAHADDIN ABULAWI, was selling the same and/or similar merchandise as the counterfeit merchandise observed at DUTTI FASHION. As of the time of this affidavit (March 25, 2025), it is unknown whether BAHADDIN ABULAWI and AHMAD ABULAWI are related.

11. I know from my training and experience that the sale of merchandise containing counterfeit trademarks can be very lucrative. Based on this investigation, I believe AHMAD ABULAWI, BAHADDIN ABULAWI, and other co-conspirators, known and unknown to this investigation, are knowingly importing counterfeit merchandise and then selling the counterfeit merchandise for profit through the operation of retail businesses.

### *DUTTI FASHION LLC*

12. A search of the Wisconsin Department of Financial Institutions website showed that DUTTI FASHION is a Wisconsin Domestic Limited Liability Company (LLC), registered on or about September 6, 2017, entity ID D060216. The Articles of Organization showed AHMAD ABULAWI and GABRIELA FEGHIU as organizers of the business, with an address for both listed as XXXX W. College Ave., Apt XXXX, Milwaukee WI 53221.

13. The annual report for DUTTI FASHION, dated August 1, 2018, listed AHMAD

4

ABULAWI as the member and registered agent of the business, with the registered agent and principal office addresses listed as 620 W. Historic Mitchell St., Milwaukee WI 53204. This is the address for DUTTI FASHION. The nature of the business was listed as clothing. The contact individual listed was AHMAD ABULAWI, with a phone number XXX-XXX-5380 and email "adamabu782@yahoo.com" ("Adam Abu").

14. The annual report for DUTTI FASHION, dated July 17, 2024, listed AHMAD ABULAWI as the president and registered agent of the business, with the registered agent and principal office addresses listed as 620 W. Historic Mitchell St., Milwaukee WI 53204. The members section for the business listed only AHMAD ABULAWI.

<u>LE DUTTI FASHION LLC</u>

15. A search of the Wisconsin Department of Financial Institutions website showed that LE DUTTI FASHION was a Wisconsin Domestic Limited Liability Company (LLC), registered on or about November 22, 2018, entity ID L063846. The business was listed as Administratively Dissolved, with a status date of December 14, 2022.

16. The Wisconsin Department of Financial Institutions website listed AHMAD ABULAWI as the registered agent of the business, with an address of the registered agent and principal office listed as 628 W. Historic Mitchell St., Milwaukee WI 53204.

<u>*JORDAN RIVER FASHION LLC*</u>

17. A search of the Wisconsin Department of Financial Institutions website showed that JORDAN RIVER FASHION is a Wisconsin Domestic Limited Liability Company (LLC), registered on or about June 29, 2021, entity ID J055058. The Articles of Organization showed BAHADDIN Y ABU-LAWI ("BAHADDIN ABULAWI") as the organizer of the business.

18. The annual report for JORDAN RIVER FASHION, dated July 1, 2024, listed

5

BAHADDIN ABULAWI as the member, president, and registered agent of the business, with the registered agent and principal office address listed as 3429 W. North Ave., Milwaukee WI 53208. This is the address for JORDAN RIVER FASHION.

<u>*U.S. Customs and Border Protection Seizures of Counterfeit Merchandise*</u>

19. As detailed below, between approximately June 2017, and January 2025, CBP has seized approximately 18 shipments containing counterfeit merchandise destined for AHMAD ABULAWI (including his aliases such as "Adam Abu"), DUTTI FASHION, and/or JORDAN RIVER FASHION. The MSRP for the 18 shipments of seized counterfeit merchandise exceeds $1.6 million.

20. **Seizure 2017SZ008546401** On or about June 8, 2017, a shipment originating from Hong Kong destined for GABRIELA FEGHIU at XXXX South 28th Street, Franklin, WI 53132 was seized by CBP. The shipment was manifested as "SHOES 36PCS" with a declared value of $48.00. Upon examination, it was discovered the package contained 12 Louis Vuitton wallets, 2 Louis Vuitton belts, 2 Louis Vuitton handbags, 6 GUCCI wallets, and 2 GUCCI belts. The merchandise was determined to be counterfeit and was seized. The MSRP value was determined to be **$16,220** for the seized merchandise.

21. **Seizure 2019SZ0098920** On or about July 10, 2019, a shipment originating from Hong Kong and destined for DUTTI FASHION was seized by CBP. The shipment was manifested as "SKIRT" with a declared value of $126.00. Upon examination, 60 Louis Vuitton wallets, 30 Louis Vuitton Hats, and 30 Gucci hats were found. The merchandise was determined to be counterfeit and was seized. The MSRP value was determined to be **$34,970** for the seized merchandise.

22. **Seizure 2019SZ0098979** On or about July 10, 2019, a shipment originating from

6

Hong Kong and destined for DUTTI FASHION was seized by CBP. The shipment was manifested as "DRESS" with a declared value of $138.00. Upon examination, 40 Louis Vuitton wallets, 30 Louis Vuitton Hats, and 30 Gucci hats were found. The merchandise was determined to be counterfeit and was seized. The MSRP value was determined to be **$31,670** for the seized merchandise.

23. **Seizure 2020SZ0079027** On or about April 13, 2020, a shipment originating from Hong Kong destined for AHMAD ABULAWI at DUTTI FASHION was seized by CBP. This shipment was manifested as "Children's Box" with a declared value of $30. Upon examination, 36 Rolex Oyster Perpetual watches of various types were found. The merchandise was determined to be counterfeit and was seized. The MSRP value was determined to be **$966,800** for the seized merchandise.

24. **Seizure 2020SZ0084447** On or about April 29, 2020, a shipment originating from Turkey destined for Monix Abu at 628 W. Historic Mitchell St., Milwaukee, WI 53205 (LE DUTTI FASHION) was seized by CBP. The shipment was manifested as "T-SHIRT SAMPLE SWEATSHIRT SAMPLE JEANS SAMPLE". Examination of the shipment revealed designer clothing, handbags and sneakers. The merchandise was determined to be counterfeit and was seized. The MSRP value was determined to be **$20,445** for the seized merchandise.

25. **Seizure 2020SZ0089500** On or about May 14, 2020, a shipment originating from Hong Kong destined for AHMAD ABULAWI at DUTTI FASHION was seized by CBP. The shipment was manifested as "PLASTIC PACKING BOX". Upon examination, it was discovered the package contained 18 packaged Cartier sunglasses. The merchandise was determined to be counterfeit and was seized. The MSRP value was determined to be **$17,010** for the seized merchandise.

7

26.     **Seizure 2020SZ0090964** On or about May 19, 2020, a shipment originating from Turkey destined for Niko Abu at DUTTI FASHION was seized by CBP. This shipment was manifested as "SHOES SAMPLE T-SHIRT JEANS SAMPLE HAT SAMPLE". Upon examination, the shipment was found to contain 1 pair of Dior shoes, 3 pairs of Dolce & Gabbana shoes, 4 pairs of Chanel shoes, 6 Versace sweatsuits, 5 Louis Vuitton sweatsuits, 3 Dolce & Gabbana polo shirts, and 5 Moncler polo shirts. The merchandise was determined to be counterfeit and was seized. The MSRP value was determined to be **$36,605** for the seized merchandise.

27.     **Seizure 2020SZ0098434** On or about June 11, 2020, a shipment originating from Turkey and destined for Niko Abu at DUTTI FASHION was seized by CBP. The shipment was manifested as "SHOES SAMPLE T-SHIRT JEANS SAMPLE HAT SAMPLE". Upon examination, 10 Amiri t-shirts, 5 Moschino t-shirts, 24 Fendi hats, 3 Dolce & Gabbana polo shirts, 5 Moncler t-shirts, 20 Balenciaga t-shirts, 5 Kenzo t-shirts, 5 Gucci t-shirts, 5 Givenchy t-shirts, 3 Christian Dior sweatshirts, 3 pair of Christian Dior sweatpants, 5 Louis Vuitton t-shirts, 5 Fendi t-shirts, 5 Off White t-shirts, 18 Balenciaga hats, and 12 Valentino hats were found. The merchandise was determined to be counterfeit and was seized. The MSRP value was determined to be **$57,071** for the seized merchandise.

28.     **Seizure 2020SZ0107518** On or about July 6, 2020, a shipment originating from Turkey destined for Adam Abu at DUTTI FASHION was seized. The shipment was manifested as "CAP ET AL CAPRI SUIT TSHIRT CAP SLIPPER". Upon examination, 10 Moncler shirts, 6 Gucci polo shirts, 6 Fendi polo shirts, 7 Moncler jackets, 7 Moncler pants, 8 pairs D Squared jeans, 4 pairs Chanel shoes, 2 pairs Dolce & Gabbana shoes, 2 pairs Dior shoes, 5 pairs Versace shoes, 4 Louis Vuitton purses, 5 Balenciaga sweatshirts, 8 Fendi sweatshirts, 5 Givenchy

8

hoodies, 9 Versace long shirts, 4 Dior sweatshirts, and 6 Chanel sweatshirts were found. The merchandise was determined to be counterfeit and was seized. The MSRP value was determined to be **$72,275** for the seized merchandise.

29.     **Seizure 2020SZ0107530** On or about July 6, 2020, a shipment originating from Turkey destined for Adam Abu at XXXX S. Scepter Dr., #XXXX, Franklin, WI 53132. According to law enforcement databases, this address is associated with AHMAD ABULAWI. This shipment was seized by CBP. The shipment was manifested as "15 PCS BELT 20 PCS SHOES SAMPLE". Upon examination, CBP found 12 Gucci belts, 16 pairs Dolce & Gabbana shoes, 10 Dior belts, 12 Hermes belts, 7 pairs Dior shoes, 2 pairs Versace shoes, 11 pairs Louis Vuitton shoes, 12 Fendi belts, 9 pairs Balenciaga shoes, and 12 Chanel belts. The merchandise was determined to be counterfeit and was seized. The MSRP value was determined to be **$84,715** for the seized merchandise.

30.     **Seizure 2020SZ0108096** On or about July 7, 2020, a shipment originating from Turkey destined for Adam Abu at XXXX South Scepter Drive #XXXX, Franklin, WI  53132 was seized by CBP. The shipment was manifested as "45 PCS KIDS CLOTHING SAMPLE". Upon examination, 10 Moncler shirts, 3 pairs Dolce & Gabbana shoes, 7 pairs Fendi shoes, 17 pairs Christian Louboutin shoes, 6 pairs Dior shoes, 4 pairs Versace shoes, 1 pair Louis Vuitton shoes, 20 Louis Vuitton belts, 6 pairs Balenciaga shoes, and 24 Balenciaga belts were found. The merchandise was determined to be counterfeit and was seized. The MSRP value was determined to be **$64,085** for the seized merchandise.

31.     **Seizure 2020SZ0124763** On or about August 13, 2020, a shipment originating from Turkey and destined to Niko Abu at 628 W. Historic Mitchell St., Milwaukee, WI 53204 (LE DUTTI FASHION) was seized by CBP. The shipment was manifested as "TEXTILE

9

GOODS". Upon examination, 36 Fendi/Off White belts, 48 Chanel/Moshino/Dior belts, 4 Versace/Dior/Balenciaga shoes, and 5 Dolce & Gabbana/Dior/Louis Vuitton shoes were found. The merchandise was determined to be counterfeit and was seized. The MSRP value was determined to be **$54,980** for the seized merchandise.

32.     **Seizure 2020SZ0142495** On or about September 22, 2020, a shipment originating from Turkey destined for HAITH NIJEM at XXXX South 28th Street, Franklin, WI 53132 was seized by CBP. The shipment was manifested as "COTTON DRESS SHOES". Upon examination, 22 pairs of Gucci shoes, 6 pairs of Louis Vuitton shoes, 9 pairs of Philipp Plein shoes, and 9 pairs of Versace shoes were found. The merchandise was determined to be counterfeit and was seized. The MSRP value was determined to be **$39,405** for the seized merchandise.

33.     **Seizure 2020SZ0142527** On or about September 22, 2020, a shipment originating from Turkey destined for HAITH NIJEM at XXXX S. 28th St., Franklin, WI 53132 was seized by CBP. The shipment was manifested as "COTTON DRESS SHOES" with a value of $265.00. Upon examination, 2 pairs of Gucci shoes, 9 pairs of Louis Vuitton shoes, 8 pair of Balenciaga shoes, 3 pairs of Philipp Plein shoes, 22 pairs of Versace Shoes, and 1 Gucci handbag were found. The merchandise was determined to be counterfeit and was seized. The MSRP value was determined to be **$33,500** for the seized merchandise.

34.     **Seizure 2021SZ0006500** On or about October 20, 2020, a shipment originating from Hong Kong destined for Adam Abu at XXXX S. Ventana Dr., Oak Creek, WI 53154 was seized by CBP. The shipment was manifested as "LADY SHOES SAMPLE". Upon examination, 8 pairs of Dolce & Gabbana shoes, 16 pairs of Gucci shoes, and 8 pairs of Moncler shoes were found. The merchandise was determined to be counterfeit and was seized. The MSRP

10

value was determined to be **$25,830** for the seized merchandise.

35. **Seizure 2021SZ0006489** On or about October 20, 2020, a shipment originating from Hong Kong destined for Adam Abu at XXXX S. Ventana Dr., Oak Creek, WI 53154 was seized by CBP. The shipment was manifested as "MEN SHOES SAMPLE". Upon examination, 8 pairs of Dolce & Gabbana shoes, 16 pairs of Gucci shoes, and 12 pairs of Balenciaga shoes were found. The merchandise was determined to be counterfeit and was seized. The MSRP value was determined to be **$29,980** for the seized merchandise.

36. **Seizure 2021SZ0031977** On or about December 29, 2020, a shipment originating from Hong Kong destined for Mon Abu at DUTTI FASHION was seized by CBP. The shipment was manifested as "PACKAGING BOX". Upon examination, 24 packaged Cartier sunglasses were found. The merchandise was determined to be counterfeit and was seized. The MSRP value was determined to be **$19,080** for the seized merchandise.

37. **Seizure 2025SZ0030197** On or about January 15, 2025, a shipment originating from Egypt destined for JORDAN RIVER FASHION at 3429 W. North Ave., Milwaukee WI 53208 (JORDAN RIVER FASHION) was seized by CBP. The shipment was manifested as "T-SHIRT SAMPLES" with a declared value of $35.00. Upon examination, 7 Louis Vuitton jackets, 5 Fendi jackets, 5 Fendi pants, 9 Prada jackets, 5 Prada pants, 4 Balenciaga sweaters, 4 Balenciaga jackets, 4 Dior sweaters, 8 Dolce & Gabbana sweaters, 4 Gucci sweaters, and 6 Dolce & Gabbana pants were found. The merchandise was determined to be counterfeit and was seized. The MSRP value was determined to be **$85,169.97** for the seized merchandise.

*Edward R. Kirby and Associates Undercover Purchase on March 23, 2022*

38. On or about March 23, 2022, Kirby Investigator entered DUTTI FASHION and observed a Middle Eastern male employee working inside the store. The Kirby Investigator also

11

observed numerous Louis Vuitton, Gucci, Fendi, and Nike merchandise available for purchase. The Kirby Investigator inquired with the employee regarding a small, brown Louis Vuitton backpack. The employee stated that this item was $100.00. After continued conversation, the employee agreed to accept $85.00 for the backpack. The Kirby Investigator purchased this item using a credit card and was issued a receipt which identified the store as DUTTI FASHION, 620 W. Historic Mitchell St., Milwaukee, Wisconsin. This bag was later inspected and identified as counterfeit.

*Edward R. Kirby & Associates, Inc. Operation on October 18, 2022*

39. On or about October 18, 2022, Investigators from Kirby, with the assistance of HSI Milwaukee Special Agents, conducted an overt operation at the business locations of DUTTI FASHION and LE DUTTI FASHION in an attempt to identify and seize the counterfeit merchandise sold at the businesses.

40. That same day, Kirby Investigators and HSI Milwaukee Special Agents entered DUTTI FASHION and were greeted by a female employee. Kirby Investigators and HSI Milwaukee Special Agents stated the purpose of the visit, after which point the employee contacted the owner, AHMAD ABULAWI, via telephone. AHMAD ABULAWI indicated that an employee identified as NIMER ASAD would travel to DUTTI FASHION and meet the HSI Special Agents and Kirby Investigators.

41. On this same date, NIMER ASAD arrived at DUTTI FASHION. HSI Special Agents spoke with NIMER ASAD and AHMAD ABULAWI and informed them that they were selling counterfeit merchandise, after which point the counterfeit merchandise was voluntarily surrendered to Kirby Investigators. NIMER ASAD voluntarily signed a receipt on behalf of AHMAD ABULAWI acknowledging the surrender of the below listed counterfeit merchandise

12

from DUTTI FASHION and LE DUTTI FASHION.

> 350 items depicting the counterfeit trademarks of Louis Vuitton
> 403 items depicting the counterfeit trademarks of Gucci
> 223 items depicting the counterfeit trademarks of Christian Dior
> 105 items depicting the counterfeit trademarks of Versace
> 91 items depicting the counterfeit trademarks of Burberry
> 46 items depicting the counterfeit trademarks of Chanel
> 11 items depicting the counterfeit trademarks of Rolex
> 14 items depicting the counterfeit trademarks of Celine
> 7 items depicting the counterfeit trademarks of Michael Kors
> 1 item depicting the counterfeit trademarks of Jimmy Cho

42. As part of the operation, Kirby Investigators photographed some of the merchandise sold at the businesses, seen below.



*Edward R. Kirby & Associates, Inc. Undercover Purchase on October 28, 2023*

43. On or about October 28, 2023, a Kirby Investigator traveled to DUTTI FASHION. The Kirby Investigator entered the location, canvassed the store, and observed numerous counterfeit items on display and available for purchase. The Kirby Investigator noted that there were significant quantities of Louis Vuitton and Gucci items, along with a smaller amount of Burberry, Fendi, and Cartier items. The Kirby Investigator took pictures of the two employees working inside the store, one of which appeared to be AHMAD ABULAWI.

44. The Kirby Investigator observed one Chanel hat hanging on display rack and

13

inquired with an employee as to the availability of additional Chanel product. The employees stated that they did not have additional Chanel merchandise and did not provide information if they would receive new inventory. The Kirby Investigator purchased the black Chanel hat for $60. The Kirby Investigator was issued a receipt which identified the store as DUTTI FASHION, 620 W. Historic Mitchell St., Milwaukee Wisconsin. As part of the undercover purchase, the Kirby Investigator took photographs of some of the merchandise available for sale, including the purchased Chanel hat, at DUTTI FASHION, seen below.

 

45. While at DUTTI FASHION, the Kirby Investigator spoke with the employee and asked if they still operated their second store (LE DUTTI FASHION). The employee stated that the second store was no longer open. The Kirby Investigator walked to the LE DUTTI FASHION store location and confirmed that the store was vacant.

46. On or about January 10, 2024, Kevin Read contacted HSI Milwaukee Special Agents informing them that DUTTI FASHION was again selling counterfeit merchandise.

*January 29, 2024 Surveillance at DUTTI FASHION*

47. On or about January 29, 2024, a HSI Special Agent conducted surveillance at

14

DUTTI FASHION. At approximately 10:38am that same day, the HSI Special Agent observed a gray Jeep Grand Cherokee, bearing Wisconsin license plate ATV2355, park in front of DUTTI FASHION. The HSI Special Agent observed AHMAD ABULAWI exit the vehicle, enter the store, and prepare the store for opening.

48. A search of Law Enforcement databases at that time showed that the vehicle was registered to AHMAD ABULAWI with an address of XXXX S. Ventana Dr., Unit XXXX, Oak Creek, WI 53154 (this is the address associated with some of the shipments containing counterfeit merchandise seized by CBP).

*February 29, 2024 Surveillance at DUTTI FASHION*

49. On or about February 29, 2024, a HSI Special Agent conducted surveillance at DUTTI FASHION. Upon establishing surveillance, the HSI Special Agent observed a white Jeep Grand Cherokee, bearing Wisconsin license plate ACY5691, parked in front of DUTTI FASHION. At approximately 11:00am that same day, the HSI Special Agent observed AHMAD ABULAWI enter the vehicle and leave the area.

50. A search of Law Enforcement databases at that time showed that the vehicle was registered to TABSEEM AZMI FROUKH with an address of XXXX S. Ventana Dr., Unit XXXX, Oak Creek WI 53154 (this is believed to be the wife of AHMAD ABULAWI).

*PNC Bank Records* Review

51. In June 2024, HSI Special Agents received PNC Bank records in response to a subpoena for an account belonging to DUTTI FASHION, account number ending in 3761. The records listed the account as a Business Checking account with address 620 W. Historic Mitchell St., Milwaukee WI 53204, and had AHMAD ABULAWI listed as the member. The provided records included statements for the time period of approximately December 5, 2023, through

15

June 12, 2024. A review of the total activity for that time period showed that there was approximately **$420,625.21** in Deposits, including approximately **$131,028.43** in cash deposits.

52. The records revealed that there were numerous Zelle transfers to and from a Zelle account associated with JORDAN RIVER FASHION, as well as one Zelle transaction from a Zelle account associated with BAHADDIN ABULAWI. Zelle is a service that allows users to send and receive money electronically between bank accounts in the United States. The Zelle service enables individuals to electronically transfer money from their bank account to another registered user's bank account using a mobile device or the website of a participating banking institution. Most of the transactions indicated that AHMAD ABULAWI was sending money to JORDAN RIVER FASHION. The transfers ranged from approximately $100 to $1,000.

*TriCity National Bank Review*

53. In July 2024, HSI Special Agents received TriCity National Bank records in response to a subpoena for accounts belonging to AHMAD ABULAWI and DUTTI FASHION. The records showed that an account belonging to AHMAD ABULAWI and TABSEEM FROUKH, account number ending in 8981, received multiple Zelle payments from accounts associated with JORDAN RIVER FASHION and BAHADDIN ABULAWI, as detailed below.

| Date | Activity Detail | Amount | Description |
|---|---|---|---|
| 11/02/23 | Deposits | $200.00 | ACCOUNT CREDIT ZELLE JORDAN RIVER FASHI TRI CITY NATIONAL 83582 6400 S 27TH ST |
| 11/24/23 | Deposits | $700.00 | ACCOUNT CREDIT ZELLE JORDAN RIVER FASHI TRI CITY NATIONAL 83582 6400 S 27TH ST |
| 11/27/23 | Deposits | $3,200.00 | ACCOUNT CREDIT ZELLE JORDAN RIVER FASHI TRI CITY NATIONAL 83582 6400 S 27TH ST |
| 11/27/23 | Deposits | $240.00 | ACCOUNT CREDIT ZELLE JORDAN RIVER FASHI TRI CITY NATIONAL 83582 6400 S 27TH ST |

16

| 12/04/23 | Deposits | $300.00 | ACCOUNT CREDIT ZELLE BAHADDIN Y ABU-LAW TRI CITY NATIONAL 83582 6400 S 27TH ST |
|---|---|---|---|
| 12/04/23 | Deposits | $275.00 | ACCOUNT CREDIT ZELLE BAHADDIN Y ABU-LAW TRI CITY NATIONAL 83582 6400 S 27TH ST |

54.     The TriCity National Bank records also showed that an account belonging to DUTTI FASHION at 620 W. Historic Mitchell St., Milwaukee WI 53204, account ending in 0343, had multiple checks written to Bahaa Abulawi (this is believed to be BAHADDIN ABULAWI), as seen below.



*HSI Undercover Purchase at DUTTI FASHION*

55.     On or about August 13, 2024, HSI Special Agents acting in an undercover (UC) capacity conducted an undercover purchase of suspected counterfeit merchandise at DUTTI FASHION. Upon arriving at the store location, the UC Agents observed AHMAD ABULAWI exit the driver's side of a white Jeep Grand Cherokee, bearing Wisconsin license plate ACY5691, and immediately open the back passenger door. AHMAD ABULAWI was observed as he removed several Nike branded shoe boxes from his vehicle. Moments later, the UC Agents observed AHMAD ABULAWI give the Nike shoe boxes to an unidentified teenaged male subject (hereinafter referred to as M/1). Both of the individuals were observed entering the tobacco shop next door to DUTTI FASHION.

56.     The UC Agents exited their vehicle and attempted to enter the store location of DUTTI FASHION. The UC Agents encountered a locked, wrought iron door which led into the

17

interior of the business. The door had a note affixed to it which directed customers to request assistance from the tobacco shop next door. A UC Agent entered the tobacco shop where he/she encountered M/1. The UC Agent told the subjects that he/she needed assistance next door. M/1 then exited the tobacco shop, entered DUTTI FASHION and unlocked the wrought iron door. The two stores appeared to share employees.

57. Upon entering the store, the UC Agents encountered a large table displaying various shoe brands, to include Nike, Gucci, Louis Vuitton, Balenciaga and Dolce & Gabbana. After several minutes, the UC Agents began inquiring about the different shoes and the sizes available for purchase. M/1 helped the UC Agents by bringing out various shoes and other merchandise that was not on display within the store. The UC Agents determined that most shoes were priced between $90 and $120. On display within the store were also hats, Louis Vuitton branded purses, Gucci branded backpacks and purses, Gucci branded belts, and other accessories.

58. A UC Agent located a display case containing several luxury brand watches. The UC Agent identified a Rolex branded watch displayed in a green Rolex box and asked M/1 if the watch was a replica. M/1 stated that the watch was "not real, but they're lookalikes that look real." The UC Agents determined that the replica Rolex watch was priced at $130. Other items on display in the store included various luxury branded belts.

59. During the undercover purchase, the UC Agents compiled the following items for purchase: three pairs of Nike athletic shoes, one pair of Gucci athletic shoes, one pair of Dolce & Gabbana athletic shoes, one pair of Louis Vuitton/Nike compilation athletic shoes, one Burberry purse, two Gucci belts, three Louis Vuitton purses, one Prada hat, a Rolex watch and bracelet, and a bottle of Aventus Creed branded cologne. The UC Agents asked M/1 for the

18

price of their total purchase. Moments later, M/1 sent what appeared to be a text message to an unknown recipient and advised the UC Agents that he was not the owner of the business. M/1 stated that his uncle was going to come and determine the total cost for their purchase.

60. Several moments later, AHMAD ABULAWI entered DUTTI FASHION and greeted the UC Agents. After determining the total cost of the items compiled by the UC Agents, AHMAD ABULAWI advised the UC Agents that the total purchase price was $2,260. A UC Agent asked AHMAD ABULAWI if they'd receive a discount if they paid in cash. AHMAD ABULAWI agreed and the UC Agent countered by offering AHMAD ABULAWI $2,000 for the total purchase. AHMAD ABULAWI agreed and was given $2,000. AHMAD ABULAWI did not provide the UC Agents a receipt or any proof of purchase.

61. A UC Agent advised AHMAD ABULAWI that he/she threw purse parties and was looking for high-end purses. UC Agent showed AHMAD ABULAWI photos of the high-end purses of interest. AHMAD ABULAWI stated that he could find those and could purchase them via a special order. AHMAD ABULAWI then provided the UC Agent with his direct phone number: XXX-XXX-5380. Upon completion of the purchase, M/1 helped the UC Agents take their purchases to their undercover vehicle. During conversation with M/1, the UC Agents determined that he was AHMAD ABULAWI's sixteen year-old nephew.

62. An online search of the phone number XXX-XXX-5380 (via Google.com) showed that the phone number was listed as the contact phone number for a Facebook page associated with the name "Dutti fashion exclusive line", URL https://www.facebook.com/p/Dutti-fashion-exclusive-line-100040197234954/ (Page ID 478477182894539). This is the same phone number provided to the Wisconsin Department of Financial Institutions as the contact phone number for AHMAD ABULAWI. The Facebook

19

page appeared to have video and picture posts of merchandise similar to the counterfeit merchandise previously observed at DUTTI FASHION.

63.    That same day, the purchased merchandise was transported to the HSI Milwaukee office. HSI Special Agents photographed the suspected counterfeit merchandise purchased by the UC Agents, pictured below, and noted that some of the merchandise was similar to the counterfeit merchandise previously observed at DUTTI FASHION. Furthermore, some of the merchandise had what appeared to be receipts, indicating that the merchandise was purchased in Hong Kong. Based on my training, experience, and the investigation to date, Hong Kong is a significant source of counterfeit consumer goods.



*Edward R. Kirby & Associates, Inc. Inspection of Purchased Merchandise*

64.    On or about August 16, 2024, a HSI Special Agent met with Kevin Read at the HSI Milwaukee office to inspect the merchandise purchased during the undercover purchase. As detailed below, Kevin Read identified that many of the purchased items were counterfeit.

65.    Kevin Read specifically identified three different Louis Vuitton handbags as counterfeit based on plastic wrap around the handles of the items, hangtags which were not

20

consistent with Louis Vuitton product, stitching on the items that was not consistent with Louis Vuitton and the items were crafted with materials that were not used by Louis Vuitton. Kevin Read inspected three pairs of Nike gym shoes along with a fourth pair of shoes which bore the trademarks of Louis Vuitton and Nike. Kevin Read identified each of these items as counterfeit based on incorrect labels, poor quality and stitching, as well as poor craftmanship. Kevin Read inspected a pair of Gucci gym shoes and two belts, which were counterfeit based on poor stitching and quality as well as improper labeling. Kevin Read inspected a counterfeit Rolex watch which was counterfeit based on poor improper magnifier, tape around clasp and poor craftsmanship. Kevin Read inspected a Prada hat which was counterfeit based on poor craftmanship and improper labeling.

### *January 27, 2025 Surveillance of JORDAN RIVER FASHION*

66. On or about January 27, 2025, HSI Special Agents conducted surveillance of JORDAN RIVER FASHION. Upon arrival, HSI Special Agents observed the store open for business. HSI Special Agents noted a silver Mitsubishi Outlander vehicle, bearing Wisconsin license plate VH9615, parked on the street in front of the store.

67. A search of Law Enforcement databases at the time showed that the vehicle was registered to HEYAM ABULAWI at XXXX S. 27th St., Milwaukee WI 53221 (this is believed to be the wife of BAHADDIN ABULAWI).

### *January 31, 2025 Surveillance of BAHADDIN ABULAWI*

68. On or about January 31, 2025, I established surveillance at the residence of BAHADDIN ABULAWI, XXXX S. 27th St., Milwaukee, WI 53221. At approximately 11:04am that same day, I observed a silver Mitsubishi vehicle, bearing Wisconsin license plate VH9615, exit the parking area of the Parnell Woods Condominiums (the residence of

21

BAHADDIN ABULAWI). I observed a male and female individuals inside the vehicle. I followed the vehicle as it travelled to the area of JORDAN RIVER FASHION. The vehicle was then observed parking on the street curb next to the front entrance of the store. A HSI Special Agent assisting with the surveillance identified BAHADDIN ABULAWI as BAHADDIN ABULAWI exited the driver's side of the vehicle and entered JORDAN RIVER FASHION. The HSI Special Agent identified the female as HEYAM ABULAWI.

*February 14, 2025 Surveillance at DUTTI FASHION*

69.     On or about February 14, 2025, a HSI Special Agent conducted surveillance at the location of DUTTI FASHION. As part of the surveillance, the HSI Special Agent entered the store and noted the store to be in similar condition and selling similar merchandise as previously observed during the undercover purchase conducted in August 2024. The HSI Special Agent spoke with an unidentified male sitting behind the display counter. The male stated that he was the co-owner of DUTTI FASHION with the previous owner (this is believed to be AHMAD ABULAWI) still partnering with him. The male stated he typically is the one running the store, but the ordering of new items happens through the other co-owner (this is believed to be AHMAD ABULAWI).

*We-Energies Utility Records*

70.     In February 2025, HSI Special Agents received We-Energies utility records in response to a subpoena for the store address of JORDAN RIVER FASHION, 3429 W. North Ave., Milwaukee WI 53208. The provided records showed that there was an active account at the address with the name JORDAN RIVER FASHION LLC. The contact information for the account listed the email address "farah4abulawi@gmail.com" and phone number XXX-XXX-8654.

22

71.     A search of the Wisconsin Department of Financial Institutions website appeared to show that a Wisconsin LLC business by the name of NEX LEVEL FASHION LLC was registered on or about January 28, 2025, with an address the same as DUTTI FASHION. The registered agent was listed as RAYMELL MOORE. This is believed to be the individual observed working at DUTTI FASHION on or about February 14, 2025.

72.     A search of the internet appeared to show a Facebook page with a username of "Nex Level Fashion, URL https://www.facebook.com/people/Nex-Level-Fashion/61572250749361/ (Page ID 532433143289323) that appeared to have pictures of merchandise similar in style to merchandise previously observed at DUTTI FASHION. The Facebook page listed an email address "nexlevelfahion1@gmail.com" under the Contact Info section.

73.     A search of Facebook, URL https://www.facebook.com/ray.moore.376695 (User ID ray.moore.376695) appeared to show a Facebook profile for Raymell MOORE. The profile appeared to have numerous pictures of an individual closely resembling Raymell MOORE.

### *February 14, 2025 Surveillance at JORDAN RIVER FASHION*

74.     On or about February 14, 2025, a HSI Special Agent conducted surveillance at JORDAN RIVER FASHION. As part of the surveillance, the HSI Special Agent entered the store and noted the store sold merchandise similar in style to DUTTI FASHION, which included Jordan, Dulce & Gabbana, Prada, and other high end luxury branded items for sale. The HSI Special Agent observed BAHADDIN ABULAWI and HEYAM ABULAWI sitting in the back-office area of the store.

### *Open Source Checks (Facebook)*

23

75. On or about February 14, 2025, open-source checks identified AHMAD ABULAWI's Facebook page under the username "Ahmad Yousef (Dutti fashion exclusive line)" and the URL www.facebook.com/ahmad.abulawi.739 (User ID "ahmad.abulawi.739"). Under AHMAD ABULAWI's intro/about section, it stated AHMAD ABULAWI is the "Owner & Designer at Dutti exclusive fashion". Upon clicking on the link to "Dutti exclusive fashion" page, it linked to a Facebook page that appeared to be for DUTTI FASHION, URL www.facebook.com/profile.php?id+100063530112413 (Page ID 323138261485782). On this page, videos of the inventory in the store could be seen last dated on or about February 23, 2022. The page also provided address of 620 W. Historic Mitchell St, Milwaukee, WI 53204 and phone number XXX-XXX-5380. This phone number matches the phone number AHMAD ABULAWI gave to the undercovers agents during the UC purchase at DUTTI FASHION in August 2024.

76. Open-source checks also identified BAHADDIN ABULAWI's Facebook page with the username Bahaa Abulawi, URL www.facebook.com/bahaa.abulawi (user ID bahaa.abulawi). This page was last posted in April of 2021 and has Ahmad Yousef (AHMAD ABULAWI) listed as a friend. BAHADDIN ABULAWI's page is also following the "Dutti fashion exclusive line" and "Dutti exclusive fashion" Facebook pages mentioned above. Another page associated with BAHADDIN ABULAWI is the Facebook page with the username Bahaa Abulawi, URL www.facebook.com/bahaa.abulawi.1 (User ID bahaa.abulawi.1). This page is following "Dutti fashion exclusive line" and "Jordan River fashion", URL www.facebook.com/jordanriverfashion (Page ID 103136928703510).

77. The Jordan River fashion Facebook page lists an address of 3429 W North Ave, Milwaukee, WI, 53208 with a phone number of XXX-XXX-8654 and email address "farah4abulawi@gmail.com". The Facebook page appeared to have video and picture posts of

24

merchandise similar to the counterfeit merchandise previously observed at DUTTI FASHION, with a last post dated on or about January 9, 2025. This page is followed by Ahmad Yousef (AHMAD ABULAWI).



*Google Reviews for DUTTI FASHION*

78.     On or about February 19, 2025, I conducted a Google search of DUTTI FASHION and noted multiple reviews/ratings left for DUTTI FASHION. At the time of this affidavit (March 25, 2025), the Google listing for DUTTI FASHION showed 26 Google reviews listed with a rating of 4.2 stars out of 5. Some of the reviews appeared to list that DUTTI FASHION was selling counterfeit merchandise, as shown below.



## BACKGROUND CONCERNING FACEBOOK

79. Meta owns and operates Facebook, a free-access social networking website that can be accessed at http://www.facebook.com. Facebook users can use their accounts to share communications, news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

80. Meta asks Facebook users to provide basic contact and personal identifying information either during the registration process or thereafter. This information may include the user's full name, birth date, gender, e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. Each Facebook user is assigned a user identification number and can choose a username.

81. Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. Facebook assigns a group identification number to each group. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other. Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

82. Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these

26

privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

83. Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

84. Facebook users can upload photos and videos to be posted on their Wall, included in chats, or for other purposes. Users can "tag" other users in a photo or video, and can be tagged by others. When a user is tagged in a photo or video, he or she generally receives a notification of the tag and a link to see the photo or video.

85. Facebook users can use Facebook Messenger to communicate with other users via text, voice, video. Meta retains instant messages and certain other shared Messenger content unless deleted by the user, and also retains transactional records related to voice and video chats. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile.

86. If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

87. Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (i.e., non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

88. Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

89. Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

90. Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

91. In addition to the applications described above, Meta provides users with access to thousands of other applications ("apps") on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

92. Meta also retains records of which Internet Protocol (IP) addresses were used by an account to log into or out of Facebook, as well as IP address used to take certain actions on the platform. For example, when a user uploads a photo, the user's IP address is retained by Meta along with a timestamp.

28

93. Meta retains location information associated with Facebook users under some circumstances, such as if a user enables "Location History," "checks-in" to an event, or tags a post with a location.

94. Social networking providers like Meta typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Facebook users may communicate directly with Meta about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Meta typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

95. As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, a Facebook user's IP log, stored electronic communications, and other data retained by Meta, can indicate who has used or controlled the Facebook account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time. Further, Facebook account activity can show how and when the account was accessed or used. For example, as described herein, Meta

29

logs the IP addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation. Additionally, location information retained by Meta may tend to either inculpate or exculpate the Facebook account owner. Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

96.     Therefore, the servers of Meta are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

97.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Meta to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

30

## CONCLUSION

98. Based on the forgoing, I request that the Court issue the proposed search warrant.

99. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving the warrant on Meta. Because the warrant will be served on Meta, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

31

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with Facebook accounts ahmad.abulawi.739, bahaa.abulawi, bahaa.abulawi.1, ray.moore.376695 and Facebook Page IDs 478477182894539, 532433143289323, 323138261485782, 103136928703510 that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc., a company headquartered in Menlo Park, California.

32

**ATTACHMENT B**

**Particular Things to be Seized**

I.      **Information to be disclosed by Meta Platforms, Inc. ("Meta")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Meta, regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Meta, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Meta is required to disclose the following information to the government for each user ID listed in Attachment A, for the time period of January 1, 2024 through the present:

     a.      All business records and subscriber information, in any form kept, pertaining to the accounts, including:

- All contact and personal identifying information, including full name, user identification number, birth date, gender, contact e-mail addresses, physical addresses (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers;

- All activity logs for the account and all other documents showing the user's posts and other Facebook activities;

- All photos and videos uploaded by the user ID and all photos and videos uploaded by any user that have that user tagged in them, including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and videos, to include deleted photos and videos, if available;

- All profile information; News Feed information; status updates; videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including

33

the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

- All records or other information regarding the devices and internet browsers associated with, or used in connection with, that user ID, including the hardware model, operating system version, unique device identifiers, mobile network information, advertising ID, and user agent string;

- All other records and contents of communications and messages made or received by the user, including all Messenger activity, private messages, chat history, video and voice calling history, and pending "Friend" requests;

- All "check ins" and other location information;

- All IP logs, including all records of the IP addresses that logged into the account;

- All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

- All information about the Facebook pages owned, created, managed by, or that the account is or was a "fan" or "member" of;

- All past and present lists of friends created by the account;

- All records of Facebook searches performed by the account;

- All information about the user's access and use of Facebook Marketplace;

- The types of service utilized by the user;

34

- The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

- All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

- Records of any Facebook accounts that are linked to the account by machine cookies (meaning all Facebook user IDs that logged into Facebook by the same machine as the account); and

- All records pertaining to communications between Meta and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

Meta is hereby ordered to disclose the above information to the government within FOURTEEN (14) DAYS of issuance of this warrant.

35

## II.    Information to be seized by the government

All information described above in Section I that constitutes evidence and/or instrumentalities of violations of Title 19, United States Code, Section 1526 (importation of counterfeit merchandise) and Title 18, United States Code, Sections 371 (conspiracy) and 2320 (trafficking in counterfeit goods or services), including, for each Account or identifier listed on Attachment A, information pertaining to the following matters:

a. Evidence concerning the operation of Dutti Fashion, Jordan River Fashion, Nex Level Fashion, or any other consumer fashion goods businesses;

b. Identification documents, correspondence, account numbers, or identifiers referencing any person, which may be evidence of the use of aliases;

c. Evidence concerning the statements, representations, marketing, and advertisements for Dutti Fashion, Jordan River Fashion, or Nex Level Fashion;

d. Communications with customers including information concerning the counterfeit nature of the goods being sold to customers;

e. Evidence concerning vendors, suppliers, or sellers of any counterfeit goods including communications with vendors, suppliers, or sellers and any records of complaints and/or disputes by or about vendors, suppliers, or sellers;

f. Evidence concerning the importation and sale of counterfeit merchandise, communications between co-conspirators about the importation and sale of counterfeit merchandise, preparatory steps taken in furtherance of the scheme, steps taken to conceal the scheme, and methods of the scheme.

g. Evidence indicating how and when the account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating

36

to the crime under investigation and to the email account owner;

h.  Evidence indicating the account owner's state of mind as it relates to the crimes under investigation;

i.  Evidence concerning the ownership, use, and/or creation of the account, including records that help reveal the whereabouts of such person(s).

37

☑ Original     [



**CLERK'S OFFICE**

**A TRUE COPY**

**Mar 26, 2025**

**s/ K. Reed**

Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br><br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>information associated with Facebook accounts ahmad.abulawi.739,<br>bahaa.abulawi, bahaa.abulawi.1, ray.moore.376695 and Facebook Page<br>IDs 478477182894539, 532433143289323, 323138261485782,<br>103136928703510 (the "Target Accounts"), that is stored at premises<br>owned, maintained, controlled, or operated by Meta Platforms, Inc. ("Meta") | )<br>)<br>)<br>)    Case No.    25    MJ    60<br>)<br>)<br>)<br>) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the     Eastern     District of     Wisconsin *(identify the person or describe the property to be searched and give its location)*:

Please see Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

Please see Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before     04/09/2025     *(not to exceed 14 days)*

❏ in the daytime 6:00 a.m. to 10:00 p.m.     ☒ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to     Honorable William E. Duffin     .

*(United States Magistrate Judge)*

❏ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

❏ for _____ days *(not to exceed 30)*     ❏ until, the facts justifying, the later specific date of _____ .

Date and time issued:     03/26/2025 at 9:45 a..m.        *William E. Duffin*

*Judge's signature*

City and state:     Milwaukee, Wisconsin        Honorable William E. Duffin, U.S. Magistrate Judge

*Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name(s) of any person(s) seized: | | |

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with Facebook accounts ahmad.abulawi.739, bahaa.abulawi, bahaa.abulawi.1, ray.moore.376695 and Facebook Page IDs 478477182894539, 532433143289323, 323138261485782, 103136928703510 that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc., a company headquartered in Menlo Park, California.

32

**Particular Things to be Seized**

I.      **Information to be disclosed by Meta Platforms, Inc. ("Meta")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Meta, regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Meta, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Meta is required to disclose the following information to the government for each user ID listed in Attachment A, for the time period of January 1, 2024 through the present:

a.      All business records and subscriber information, in any form kept, pertaining to the accounts, including:

- All contact and personal identifying information, including full name, user identification number, birth date, gender, contact e-mail addresses, physical addresses (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers;

- All activity logs for the account and all other documents showing the user's posts and other Facebook activities;

- All photos and videos uploaded by the user ID and all photos and videos uploaded by any user that have that user tagged in them, including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and videos, to include deleted photos and videos, if available;

- All profile information; News Feed information; status updates; videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including

33

the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

- All records or other information regarding the devices and internet browsers associated with, or used in connection with, that user ID, including the hardware model, operating system version, unique device identifiers, mobile network information, advertising ID, and user agent string;

- All other records and contents of communications and messages made or received by the user, including all Messenger activity, private messages, chat history, video and voice calling history, and pending "Friend" requests;

- All "check ins" and other location information;

- All IP logs, including all records of the IP addresses that logged into the account;

- All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

- All information about the Facebook pages owned, created, managed by, or that the account is or was a "fan" or "member" of;

- All past and present lists of friends created by the account;

- All records of Facebook searches performed by the account;

- All information about the user's access and use of Facebook Marketplace;

- The types of service utilized by the user;

34

- The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

- All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

- Records of any Facebook accounts that are linked to the account by machine cookies (meaning all Facebook user IDs that logged into Facebook by the same machine as the account); and

- All records pertaining to communications between Meta and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

Meta is hereby ordered to disclose the above information to the government within FOURTEEN (14) DAYS of issuance of this warrant.

35

## II.   Information to be seized by the government

All information described above in Section I that constitutes evidence and/or instrumentalities of violations of Title 19, United States Code, Section 1526 (importation of counterfeit merchandise) and Title 18, United States Code, Sections 371 (conspiracy) and 2320 (trafficking in counterfeit goods or services), including, for each Account or identifier listed on Attachment A, information pertaining to the following matters:

a. Evidence concerning the operation of Dutti Fashion, Jordan River Fashion, Nex Level Fashion, or any other consumer fashion goods businesses;

b. Identification documents, correspondence, account numbers, or identifiers referencing any person, which may be evidence of the use of aliases;

c. Evidence concerning the statements, representations, marketing, and advertisements for Dutti Fashion, Jordan River Fashion, or Nex Level Fashion;

d. Communications with customers including information concerning the counterfeit nature of the goods being sold to customers;

e. Evidence concerning vendors, suppliers, or sellers of any counterfeit goods including communications with vendors, suppliers, or sellers and any records of complaints and/or disputes by or about vendors, suppliers, or sellers;

f. Evidence concerning the importation and sale of counterfeit merchandise, communications between co-conspirators about the importation and sale of counterfeit merchandise, preparatory steps taken in furtherance of the scheme, steps taken to conceal the scheme, and methods of the scheme.

g. Evidence indicating how and when the account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating

36

to the crime under investigation and to the email account owner;

h.  Evidence indicating the account owner's state of mind as it relates to the crimes under investigation;

i.  Evidence concerning the ownership, use, and/or creation of the account, including records that help reveal the whereabouts of such person(s).

37